*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 25, 2024

Plaintiff-Appellee,

v

No. 363013
Livingston Circuit Court
LC No. 21-026581-FH

MARK DOUGLAS SEIGEL,

Defendant-Appellant.

Before: GARRETT, P.J., and LETICA and MALDONADO, JJ.

PER CURIAM.

A jury convicted defendant, Mark Seigel, of two counts of second-degree criminal sexual conduct (CSC-II) for abusing his granddaughter. At trial, the prosecution also introduced evidence that Seigel had sexually assaulted his daughter at a young age two decades earlier. The trial court sentenced Seigel to concurrent terms of 10 to 15 years' imprisonment for both counts of CSC-II. On appeal, Seigel challenges the admission of the evidence of prior sexual assaults, asserts various claims of ineffective assistance of counsel, and seeks resentencing. Finding no merit to his arguments, we affirm.

## I. BACKGROUND

This case arises from Seigel's sexual assault of VD, his six-year-old granddaughter, in 2018. VD testified that, on multiple occasions during the three months she lived with Seigel, he brought her into his bedroom while her grandmother was at work and told her to lick various substances off of his penis. VD initially told no one about the sexual abuse because Seigel told her not to and promised her candy as a reward for keeping it a secret.

In addition to VD's testimony—and over Seigel's objection—the trial court allowed the prosecution to introduce other-acts evidence pursuant to MCL 768.27a. Seigel's biological daughter, SJ, who was 30 years old at trial, testified that Seigel had sexually abused her when she was five or six years old. SJ described two specific instances of "unwanted touching" by Seigel that occurred while she was alone with him in his home. During the first instance, Seigel used the "eraser end" of a pencil to touch her vagina. The second time, Seigel joined her in the shower and began touching her vagina with his hands. SJ disclosed the assaults to her mother almost

-1-

immediately, who then reported the allegations to Children's Protective Services (CPS). SJ recalled speaking to a CPS employee about the sexual abuse, and CPS substantiated the allegations in 1996, but Seigel was never criminally charged. Seigel was listed on CPS's "central registry" as a result of SJ's allegations.

In January 2018, VD began living with Seigel and his wife in a relative placement. But the substantiated allegations against Seigel meant that his home could not be licensed as a foster home. When the licensing worker involved in placing VD in an appropriate foster home discovered the substantiated allegations, VD was removed from Seigel's care.[1] VD was then placed with an unrelated family who expressed interest in adopting her. Despite his inability to become a licensed foster home, Seigel continued to pursue adoption of VD. About two years after the assaults, while VD's licensed foster family and Seigel were both attempting to adopt her, VD disclosed Seigel's abuse to her foster mother. VD's foster mother testified that VD told her that, while she was living with Seigel, he had told her multiple times to rub various substances onto his penis and lick them off. VD informed her foster mother that she told no one else because Seigel "had promised her candy and she likes candy." VD's foster mother immediately reported VD's disclosures to the authorities, and VD was interviewed by a licensed forensic interviewer. VD's foster mother acknowledged that her adoption of VD was finalized shortly after VD disclosed the assaults. Had she not been a mandatory reporter as a foster parent, she claimed that she "would have waited until the adoption was final" to report VD's disclosures because she didn't want anyone to think that she made VD "say something untrue to help" the adoption process.

Seigel's primary theory at trial was that VD's adoptive parents instructed her to fabricate the allegations against him to ensure that they, rather than Seigel, could successfully adopt her. Defense counsel heavily relied on cross-examination of the prosecution's witnesses and closing argument to present this theory. The defense also presented four of its own witnesses, all of whom were related to Seigel and VD. All four witnesses testified that Seigel maintained a candy bowl as VD described, but Seigel never kept "actual candy" in the bowl; instead, he kept "healthier" snacks in the bowl, such as granola bars, fruit snacks, and applesauce. Three of the witnesses also testified that, while VD lived with Seigel, they visited Seigel's home several times a week at random times of the day, often showing up unannounced.

As noted, the jury convicted Seigel of two counts of CSC-II, and the trial court sentenced him to concurrent terms of 10 to 15 years' imprisonment. Seigel now appeals as of right.

## II. OTHER-ACTS EVIDENCE

Seigel contends that the trial court erred by allowing SJ to testify about other sexual assaults because this evidence was unduly prejudicial and violated his due-process right to a fair trial.

---

[1] Apparently, Seigel's last name was misspelled in the central registry, resulting in VD's initial placement in his care.

## A. STANDARD OF REVIEW

By objecting to the admission of the other-acts evidence, Seigel preserved this issue for appeal. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). We review a preserved evidentiary challenge for an abuse of discretion. *Id*. at 251. That means the trial court's decision "will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252. Consistent with this deferential posture, "a decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. at 251-252.

## B. ANALYSIS

MRE 404(b) generally prohibits the use of evidence of other crimes to establish the defendant's character or propensity, but MCL 768.27a is an exception to the rule. The statute provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."[2] MCL 768.27a(1). The purpose of MCL 768.27a is to allow juries in cases involving sexual misconduct against minors "to consider evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime." *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012).

Evidence admissible under MCL 768.27a may still be excluded under MRE 403, however. *Id*. at 481. MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In *Watkins*, 491 Mich at 487-488, our Supreme Court enumerated nonexhaustive considerations that a court may evaluate when determining whether other-acts evidence should be excluded under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

"[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

Seigel initially suggests that the trial court's legal analysis was deficient because the court failed to articulate why the *Watkins* factors that favored exclusion were not relevant. "While the factors are important tools that may inform a court's decision to admit or exclude other-acts

---

[2] There is no dispute that the conduct alleged by SJ constituted a "listed offense against a minor" as defined by MCL 768.27a(2), nor does Seigel suggest that the evidence is irrelevant.

evidence, they do not supersede the standard plainly provided in MRE 403 itself." *People v Hoskins*, 342 Mich App 194, 203; 993 NW2d 48 (2022) (cleaned up). *Watkins* therefore does not require trial courts to discuss each factor on the record before issuing its ruling. See *id*. Regardless, the trial court listed the *Watkins* factors on the record and stated that it believed none of the factors supported exclusion. The court explained that MCL 768.27a is a "rule of inclusion" and focused its analysis on the similarity between the other-acts evidence and the charged offense. While a more detailed analysis could have been beneficial, the trial court did not commit an error of law by failing to give a complete explanation why none of the *Watkins* factors supported exclusion.

Seigel next argues that the trial court misapplied the *Watkins* factors and abused its discretion by ruling that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. We address each factor in turn.

First, as to dissimilarity, the trial court did not err by finding that the other-acts evidence was "strikingly similar" to the current offenses. Seigel was closely related to both VD and SJ, he first assaulted them when they were each five or six years old, and there was a significant age gap between Seigel and each girl—over two decades between Seigel and SJ, and over four decades between Seigel and VD. While Seigel told VD to lick his penis but touched SJ's vagina, all the alleged acts constituted inappropriate sexual contact with a child. See MCL 750.520a(q); MCL 750.520c(1)(a). All the described incidents also involved Seigel sexually assaulting the girls while they were in his home, under his care, and with no other adults present. Though Seigel used candy as a reward to keep VD from disclosing the assaults but did not do so with his daughter, the charged offenses and the acts against his daughter "are not so dissimilar as to preclude admission of the other-acts evidence." *People v Solloway*, 316 Mich App 174, 194; 891 NW2d 255 (2016). This factor favors admission of the other-acts evidence.

Second, Seigel emphasizes the significant amount of time that had passed between the other acts and the charged offenses and argues that temporal proximity weighs against admission of the evidence. The charged offenses occurred in early 2018, and CPS substantiated the allegations by SJ in 1996. Therefore, these incidents were separated by about 22 years. In *Hoskins*, 342 Mich App at 206, we noted that a temporal divide of 17 years weighed in favor of exclusion of the other-acts evidence because "the strength of the propensity inference is weakened when a very long period of time has passed between the prior acts and the current charges." We reach the same conclusion here. Third, considering the infrequency of the other acts, SJ testified that Seigel assaulted her twice within a one-year period. "Given that this was not a one-time occurrence, we cannot conclude that these other acts occurred so infrequently as to support exclusion of the evidence." *Id*. at 207. Fourth, neither party identified any intervening acts that weigh against admission of the other-acts evidence. See *Solloway*, 316 Mich App at 195.

Fifth, we address the reliability of the other-acts evidence. This factor allows consideration of whether the other-acts evidence resulted in the filing of charges or a conviction. See *Watkins*, 491 Mich at 489 ("That MCL 768.27a permits the introduction of other-acts evidence that did not result in a conviction does not mean that evidence that did not result in a conviction must be admitted or that a court may not consider whether charges were filed or a conviction rendered when weighing the evidence under MRE 403."). On the one hand, no charges were filed against Seigel related to the alleged sexual abuse of SJ. On the other hand, CPS investigated and substantiated the allegations in 1996. Although the uncharged other-acts evidence is less reliable

than evidence of a conviction, the fact that CPS substantiated SJ's allegations near the time when the abuse occurred supports reliability. Weighing this evidence, we conclude that the reliability factor neither cuts for or against admission.

Finally, the "need" for additional evidence "asks whether the other-acts evidence is important to the prosecution's case, particularly when there is no physical evidence of the crime or the victim's memory has faded." *Hoskins*, 342 Mich App at 209 n 8. The prosecution needed SJ's testimony in this case because there were no eyewitnesses to the assaults of VD, and VD did not report the crimes for about two years. See *id*. at 209; *Solloway*, 316 Mich App at 196. This factor weighs in favor of admission.

Given that only one of the *Watkins* factors weighs in favor of exclusion of the other-acts evidence and recognizing that the propensity inference must be weighed in favor of the evidence's admission, we conclude that the trial court did not abuse its discretion by admitting the other-acts evidence. At best, the trial court's evidentiary decision was a close call that should not be disturbed by this Court. See *Thorpe*, 504 Mich at 251-252. Because the trial court properly admitted this evidence, Seigel was not denied his due-process right to a fair trial. See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Seigel next argues that defense counsel was ineffective for (1) failing to consult or call an expert witness in the reliability of the memory of children; (2) failing to consult a private investigator to further investigate the reliability of the allegations made by both VD and SJ; (3) generally failing to investigate the case, particularly as it related to the reliability of the allegations of VD and SJ; and (4) failing to adequately advocate for the exclusion of the other-acts evidence.[3]

## A. STANDARD OF REVIEW

Claims of ineffective assistance of counsel generally present mixed questions of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Clear error exists when we are "left with a definite and firm conviction that a mistake was made," *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019), while de novo review "means that we review the issues independently, with no required deference to the trial court," *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). But in this case, Seigel failed to move for an evidentiary hearing or new trial, so our review is limited to errors apparent from the record. *Head*, 323 Mich App at 538-539.

---

[3] Seigel also appears to argue that defense counsel was ineffective at sentencing, particularly as it related to the scoring OV 13 and the trial court's consideration of other-acts evidence when imposing sentence. Seigel has abandoned these issues by failing to adequately brief the merits of his arguments. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). In any event, as will be discussed in section IV, Seigel's claims of sentencing error lack merit, so defense counsel could not have performed ineffectively in how he opposed a meritless issue below. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. LEGAL PRINCIPLES

The Michigan and United States Constitutions require that criminal defendants receive the assistance of counsel in their defense. Const 1963, art 1, § 20; US Const Am VI. "The right to counsel . . . is the right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Traver*, 328 Mich App 418, 422; 937 NW2d 398 (2019). This burden includes "overcom[ing] the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Generally, a defense attorney's decision whether to retain an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "But a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015).

## C. FAILURE TO CONSULT AN EXPERT WITNESS AND PRIVATE INVESTIGATOR

Seigel argues that defense counsel was ineffective for failing to consult or call an expert in the reliability of the memory of children at his trial because the use of an expert at trial would have undermined the credibility of both VD and SJ.

The existing record is devoid of any evidence that defense counsel did not consult an expert or determine, after consulting an expert, that presenting expert testimony was unnecessary or contrary to his trial strategy. The record reflects that defense counsel's strategy was to undermine the reliability of VD's allegations and argue that VD and her adoptive parents were motivated to fabricate the abuse by Seigel. Defense counsel spent the majority of cross-examination of VD challenging her credibility by emphasizing all the details about the assaults that she could not remember. Defense counsel also thoroughly cross-examined SJ to undermine the reliability of her allegations and suggested that SJ fabricated her allegations to retaliate against Seigel for his absence from her life growing up. Further, defense counsel's investigation and trial strategy went beyond cross-examining the prosecution's witnesses. The defense presented four witnesses of its own, each of whom offered testimony that conflicted with crucial pieces of VD's allegations.

Seigel unpersuasively relies on the Supreme Court's decision in *People v Ackley*, 497 Mich 381; 870 NW2d 858 (2015), to argue that defense counsel was ineffective for failing to consult or call an expert witness. In *Ackley*, 497 Mich at 389-390, a case involving the disputed cause of a child's death, the prosecution's theory was that the defendant intentionally caused the child's injuries, while the defense theory was that the injuries were caused by an accidental fall. Because there was no victim or eyewitness testimony, expert testimony "was the cornerstone of the prosecution's case." *Id*. at 384. The prosecution presented five expert witnesses whose conclusions went unrebutted by the defense. *Id*. By failing to investigate and secure expert assistance to counter the prosecution's expert medical testimony, defense counsel's performance resulted in a "defense theory without objective, expert testimonial support" and an attorney who

was "insufficiently equipped to challenge the prosecution's experts." *Id*. at 392. The Supreme Court therefore held that counsel's performance was objectively unreasonable. *Id*. at 393.

Unlike in *Ackley*, expert testimony played no role in this case. The prosecution presented no expert witnesses and relied heavily on VD's and SJ's testimony to meet its burden of proof and to establish Seigel's propensity to commit this crime. The jury had the opportunity to observe these witnesses, as well as others presented by the prosecution and defense, and weigh their credibility. "Although defendant believes that additionally presenting an expert . . . would have been helpful, and defendant may even be right, that counsel could conceivably have done more, or that a particular trial strategy failed, does not mean counsel's performance was deficient." *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016). Seigel has not established that counsel performed deficiently by failing to secure expert testimony on the fallibility of child memory.

For the same reasons, Seigel's argument about defense counsel's failure to consult a private investigator is just as meritless. Seigel has provided this Court with no basis to conclude that these decisions were not a reasonable trial strategy.

## D. GENERAL FAILURE TO INVESTIGATE

Along similar lines, Seigel argues that defense counsel's failure to consult and call an expert witness and consult a private investigator resulted from an incomplete investigation. "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and conducting a "less than complete investigation" before making a strategic decision can amount to ineffective assistance. *Trakhtenberg*, 493 Mich at 52-53 (cleaned up). As with Seigel's previous claims, however, nothing in the record suggests that defense counsel failed to investigate the reliability or credibility of the sexual abuse allegations or determined that a further investigation was necessary prior to deciding not to consult or call an expert witness and private investigator. Again, defense counsel successfully established weaknesses in the testimony and used these weaknesses to argue that the complainants lacked credibility and were motivated to fabricate their allegations. Counsel also presented four witnesses on behalf of the defense, all of whom testified either that the candy bowl referenced by VD never contained actual candy or that several people often visited Seigel's home at random times of the day when VD lived there. There is no basis to conclude that defense counsel's failure to consult or call an expert witness or investigator stemmed from an inadequate investigation. See *id*. at 52.

## E. FAILURE TO EXCLUDE OTHER-ACTS EVIDENCE

Seigel also argues that defense counsel was ineffective for failing to advocate "vigorously" enough for the exclusion of the other-acts evidence. As discussed, the trial court did not abuse its discretion by admitting the other-acts evidence. Any more "vigorous" objection on this issue therefore would have been futile, and defense counsel is not constitutionally ineffective for failing to make futile or meritless objections. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### F. REMAND FOR EVIDENTIARY HEARING

Finally, Seigel requests in the alternative that this Court remand the case to the trial court for an evidentiary hearing. Seigel's request is improper because it was made in the text of his appellate brief, rather than in a proper motion to remand under MCR 7.211(C)(1). Seigel attaches numerous documents to his brief on appeal, including several affidavits, as appellate offers of proof, in an effort to show that defense counsel was ineffective for the discussed reasons. Most of the attached documents, however, were never offered as evidence in the trial court, and "to consider evidence presented on appeal that the parties failed to present to the trial court would be an impermissible expansion of the lower-court record." *People v Morrison*, 328 Mich App 647, 655; 939 NW2d 728 (2019). See MCR 7.210(A) ("Appeals to the Court of Appeals are heard on the original record."). We therefore decline to consider the documents attached by Seigel that are presented for the first time on appeal.

Even if we exercised remarkable lenience to view Seigel's request as a properly filed motion to remand, we would still reject his argument. A party seeking remand to develop a factual record for appeal must show "that development of a factual record is required for appellate consideration of the issue," and the request "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing," MCR 7.211(C)(1). None of the attached documents, even if we consider them appropriate offers of proof, set forth additional facts that would require further development to determine whether defense counsel was ineffective. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007) ("Because defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective, we again deny defendant's request for a remand."). The existing record is sufficient to determine that defense counsel was effective in Seigel's case, so remand for an evidentiary hearing is unwarranted.

## IV. SENTENCING

Seigel next challenges his sentence, claiming error in the trial court's assessment of 25 points for offense variable (OV) 13 and consideration of the other-acts evidence presented at trial.

### A. STANDARD OF REVIEW

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Under the sentencing guidelines, the trial court's factual findings must be supported by a preponderance of the evidence. *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021). The trial court may draw "reasonable inferences arising from the record evidence" to sustain the scoring of an offense variable. *People v Barnes*, 332 Mich App 494, 499; 957 NW2d 62 (2020) (cleaned up).

## B. OV 13

We begin with Seigel's challenge to the scoring of OV 13 at 25 points. OV 13 addresses an offender's "continuing pattern of criminal behavior." MCL 777.43(1). The trial court must assess 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). To determine the appropriate score under OV 13, the trial court must consider "all crimes within a 5-year period, including the sentencing offense . . . , regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Seigel contends that the preponderance of the evidence did not establish three or more crimes against a person because he was only convicted of two counts of CSC-II and trial testimony established only that he had sexually assaulted VD more than once. Seigel's argument, however, fails to acknowledge that "[w]hen calculating the sentencing guidelines, a court may consider *all* record evidence, including the contents of a PSIR [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (emphasis added). At the preliminary examination, VD testified that she had rubbed lotion on Seigel's penis at least twice and licked chocolate off of his penis at least twice. The PSIR also stated that VD rubbed "chocolate, ranch dressing, lotion and other substances" on Seigel's penis and that VD touched or licked his penis "numerous times." Though Seigel was only charged for two instances of CSC,[4] all the referenced instances constitute CSC-II, MCL 750.520c(1)(a), which is a crime against a person, MCL 777.16y. The fact that the other instances did not result in a charge or conviction is irrelevant for scoring OV 13. See MCL 777.43(2)(a). In light of Seigel's two convictions and the other instances of sexual abuse described at the preliminary examination and in the PSIR, there was sufficient evidence to conclude by a preponderance of the evidence that Seigel committed at least three CSC offenses during the time that VD lived with him. The trial court therefore did not clearly err by assessing 25 points for OV 13.

## C. CONSIDERATION OF OTHER-ACTS EVIDENCE

Finally, Seigel asserts that the trial court impermissibly relied at sentencing on the other-acts evidence presented at trial through SJ's testimony.

Although Seigel reasons that our Supreme Court's decision in *Beck*, 504 Mich 605, supports his position, *Beck* in fact forecloses it. *Beck* held that a trial court may not rely on acquitted conduct when imposing a sentence because doing so is "fundamentally inconsistent with the presumption of innocence itself." *Id*. at 626-627, 629. Unlike uncharged acts, acquitted conduct has been "formally charged and specifically adjudicated by a jury," so "uncharged and therefore unconsidered-by-a-jury conduct is apples to acquitted conduct's oranges." *Id*. at 620,

---

[4] Seigel was originally charged with one count of CSC-I for fellatio and one count of CSC-II. After the preliminary examination, Seigel was instead bound over on two counts of CSC-II because VD testified to rubbing and licking Seigel's penis but not to any sexual penetration. See MCL 750.520b(1)(a).

622. Accordingly, "[w]hen a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard." *Id.* at 626.

The trial court relied on the other-acts evidence that Seigel had also sexually assaulted SJ to justify the sentence it imposed. This evidence was "the type of 'uncharged conduct' that *Beck* expressly permits trial courts to consider." *Barnes*, 332 Mich App at 509 (cleaned up). The trial court concluded that this evidence showed Seigel's proclivity to abuse vulnerable people within his own family, including his young daughter and granddaughter. Because the other-acts evidence the trial court relied on was uncharged conduct rather than impermissible acquitted conduct, the trial court did not err by considering this evidence when imposing Seigel's sentence. See *id*.[5]

We affirm.

/s/ Kristina Robinson Garrett
/s/ Anica Letica
/s/ Allie Greenleaf Maldonado

---

[5] Seigel does not otherwise challenge the proportionality of the upward departure sentence imposed by the trial court. Therefore, we decline to address the prosecution's argument in support of the sentence's proportionality.